IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| ADAM WL EARLEY, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) CIVIL ACTION NO. 16-0609-MU |
| | ) |
| NANCY A. BERRYHILL, | ) |
| Acting Commissioner of Social Security, | ) |
| | ) |
| Defendant. | ) |

**<u>MEMORANDUM OPINION AND ORDER</u>**

Plaintiff Adam WL Earley brings this action, pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3), seeking judicial review of a final decision of the Commissioner of Social Security ("the Commissioner") denying his claim for Disability Insurance Benefits ("DIB") under Title II of the Social Security Act ("the Act") and for Supplemental Security Income ("SSI"), based on disability, under Title XVI of the Act. The parties have consented to the exercise of jurisdiction by the Magistrate Judge, pursuant to 28 U.S.C. § 636(c), for all proceedings in this Court. (Doc. 18 ("In accordance with the provisions of 28 U.S.C. 636(c) and Fed. R. Civ. P. 73, the parties in this case consent to have a United States Magistrate Judge conduct any and all proceedings in this case, … order the entry of a final judgment, and conduct all post-judgment proceedings.")). *See also* Doc. 20. Upon consideration of the administrative record, Earley's brief, the Commissioner's brief, and the arguments made at the hearing on September 14,

1

2017 before the undersigned Magistrate Judge, it is determined that the Commissioner's decision denying benefits should be affirmed.[1]

## I. PROCEDURAL HISTORY

Earley applied for a period of disability and DIB, under Title II of the Act, 42 U.S.C. §§ 423 - 425, and for SSI, based on disability, under Title XVI of the Act, 42 U.S.C. §§ 1381-1383d, on August 7, 2015, alleging disability beginning on January 1, 2010. (Tr. 247-49, 259). He later amended his alleged onset date to July 6, 2015. (Tr. 42). His application was denied at the initial level of administrative review on October 22, 2015. (Tr. 132-36). On November 3, 2015, Earley requested a hearing by an Administrative Law Judge (ALJ). (Tr. 146-47). After hearings were held on January 14, 2016, April 14, 2016, and August 3, 2016, the ALJ issued an unfavorable decision finding that Earley was not under a disability from the date the application was filed through the date of the decision, August 25, 2016. (Tr. 37-48, 49-93, 94-105, 16-36). Earley appealed the ALJ's decision to the Appeals Council, and, on November 2, 2016, the Appeals Council denied his request for review of the ALJ's decision, thereby making the ALJ's decision the final decision of the Commissioner. (Tr. 1-5).

After exhausting his administrative remedies, Earley sought judicial review in this Court, pursuant to 42 U.S.C. §§ 405(g) and 1383(c). (Doc. 1). The Commissioner filed an answer on March 13, 2017 and the social security

---

[1] Any appeal taken from this Order and Judgment shall be made to the Eleventh Circuit Court of Appeals. *See* Doc. 18. ("An appeal from a judgment entered by a Magistrate Judge shall be taken directly to the United States Court of Appeals for the judicial circuit in the same manner as an appeal from any other judgment of this district court.").

transcript on March 14, 2017. (Docs. 12, 13). Both parties filed briefs setting forth their respective positions. (Docs. 14, 15). Oral argument was held on September 14, 2017. (Doc. 19). The case is now ripe for decision.

## II.  CLAIM ON APPEAL

Earley alleges that the ALJ's decision to deny him benefits is in error for the following reason:

1. The ALJ erred in giving superior weight to a non-examining medical expert than to the opinion of Earley's long-standing treating psychiatrist.

 (Doc. 14 at p. 2).

## III. BACKGROUND FACTS

Earley was born on March 1, 1990, and was 25 years old at the time he filed his claim for benefits. (Tr. 52). Earley alleged disability due to a variety of mental issues, including anxiety, a torn shoulder, and hearing loss. (Tr. 63). After serving two years in the Army and attending two years of junior college, he graduated from Huntington College with a degree in Business Management in May of 2015. (Tr. 54). While in the Army, he worked in Avionics Survivability Equipment Repair. (Tr. 55). He has worked as a fast food restaurant cook and cashier, on the recreational staff at The Grand Hotel, as a sales associate at several retailers, as a salesperson at a car dealership, as a supervisor at a grocery store, and as a bank teller. (Tr. 56-62). Earley engages in normal life activities; such as, handling his personal care, making easy meals, going out for walks, working out at the gym, taking out the garbage, grocery shopping, reading, watching TV, socializing with friends on occasion, and doing research

and social media on the computer. (Tr. 81-85). He has a driver's license and is able to drive. (Tr. 53-54). After conducting several hearings, the ALJ made a determination that Earley had not been under a disability during the relevant time period, and thus, was not entitled to benefits. (Tr.19-31).

### IV. ALJ'S DECISION

After considering all of the evidence, the ALJ made the following findings that are relevant to the issues presented in his March 23, 2015 decision:

> In activities of daily living, the claimant has mild restriction. On October 21, 2015, Linda Duke, Ph.D. (DDS reviewing psychologist) completed and signed a Psychiatric Review Technique (Exhibit 1A). After reviewing the medical evidence of record, Dr. Duke stated that the claimant has mild restriction of activities of daily living (Exhibit 1A). On February 16, 2016, the claimant was examined by Kim Whitchard, Ph.D. in a mental consultative examination (Exhibit 9F). Dr. Whitchard stated that the claimant is 25 years old (Exhibit 9F). Dr. Whitchard stated that the claimant "goes to the gym and exercises every day. He then comes home, showers, and watches movies. He is able to perform ADL's." (Exhibit 9F). Additionally, Dr. Whitchard noted, "He does have a driver's license and is able to drive himself. He drove himself to the evaluation." (Exhibit 9F). After considering the overall record as to the claimant's abilities of daily living, the undersigned finds that he has mild limitation in this area of functioning.
>
> In social functioning, the claimant has moderate difficulties. Dr. Duke stated that the claimant has moderate difficulties in maintaining social functioning (Exhibit 1A). Dr. Whitchard stated that the claimant "described his childhood as 'good, loving ... He has never been married and has no children. He currently lives with his maternal grandmother." (Exhibit 9F). After considering the overall record as to the claimant's abilities of social functioning, the undersigned finds that he has moderate limitation in this area of functioning.
>
> With regard to concentration, persistence or pace, the claimant has moderate difficulties. Dr. Duke stated that the claimant has

4

moderate difficulties in maintaining concentration, persistence or pace (Exhibit 1A). Dr. Whitchard stated that the claimant was in the U.S. Army for two years (Exhibit 9F). Dr. Whitchard stated that the claimant "obtained an AA from Faulkner in 2013. He received a BA in Business Management from Huntington College in 2015." (Exhibit 9F). Dr. Whitchard stated that the claimant "was able to perform serial 7's. He was able to perform serial 4's. He was able to calculate 3 of 3 multiplication questions. He was able to calculate 2 of 2 simple word problems."(Exhibit 9F). In the third hearing, the medical expert testified that the claimant would not meet listings 12.04 or 12.06 (Hearing Testimony). After considering the overall record as to the claimant's abilities regarding concentration, persistence or pace, the undersigned finds that he has moderate limitation in this area of functioning.

\* \* \*

**5. After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform less than the full range of medium work as defined in 20 CFR 404.1567(c) and 416.967(c). The claimant could lift/carry up to fifty pounds occasionally with twenty-five pounds frequently. The claimant could sit for six hours, stand for six hours, and walk for six hours in a regular eight-hour workday. The claimant could reach overhead frequently on the right side. The claimant could reach in all other directions on the right side frequently. The claimant could work around unprotected heights, moving mechanical parts, and dust/odors/fumes/pulmonary irritants occasionally. The claimant is limited to simple, routine, and repetitive work tasks. The claimant is limited to simple work-related decisions. Contact with supervisors, coworkers, and the public should be casual and non-confrontational. The claimant could interact with supervisors, coworkers, and the public occasionally. The claimant is limited to tolerating slowly introduced changes in the work setting.**

\* \* \*

At the first hearing (held on January 14, 2016), the claimant amended his alleged onset date of disability to July 6, 2015.

The claimant stated that he started working at Staples a week prior to that hearing. At the second hearing (held on April 14, 2016) the claimant stated that he has a driver's license. The claimant stated that he graduated college in May 2015. The claimant was in the U.S. Army in 2007 to 2009. The claimant complained of shoulder pain, tinnitus and mental problems. The claimant stated that he exercises in a gym. The claimant stated that he could bench press up to one-hundred pounds. He stated that his asthma is well controlled by medications. The claimant stated that he has panic attacks. The claimant is able to pay bills, complete household chores, and shop in stores. The claimant stated that he is on Facebook and he is internet literate. In the third hearing (held August 3, 2016), the medical expert John Davis, Ph.D., testified at the hearing. Dr. Davis stated that the claimant has mild limitations in his mental impairments. Dr. Davis stated that the claimant would not meet listings 12.04 or 12.06. The undersigned finds great weight to the opinions of Dr. Davis as he found no disabling mental impairments and that the claimant did not meet or equal a listing. However, the undersigned made the claimant's mental impairments severe to accommodate the claimant's subjective complaints.

The longitudinal medical evidence does not support the degree of impairment alleged or the presence of disabling mental or physical impairments. While the claimant has a diagnosed condition that could cause limitations, the medical findings are not consistent with the degree of debilitation alleged.

\* \* \*

With regards to the claimant's mental impairments, he was examined by Chad Hagans, Ph.D. at Biloxi VAMC on September 14, 2010 (Exhibit 1F). Dr. Hagans stated that the claimant has anxiety, PTSD and panic attacks (Exhibit 1F). As to the claimant's PTSD, Dr. Hagans noted, "No combat trauma. Never deployed. Has not incurred traumatic event while in the Army ... Only symptoms are irritability and insomnia." (Exhibit 1F). For hobbies, the claimant likes to go to the gym every day (Exhibit 1F). Dr. Hagans determined that the claimant has panic disorder and his GAF score is 75 (Exhibit 1F).

On July 7, 2015, the claimant was examined by Terry Passman,

6

M.D. at East Bay Psychiatry (Exhibit 5F). Dr. Passman stated that the claimant has no suicidal or homicidal intent, means of plan (Exhibit 5F). Dr. Passman stated that the claimant has OCD and generalized anxiety disorder (Exhibit 5F). Dr. Passman also stated that the claimant's GAF score is 60 (Exhibit 5F). In a follow-up examination on September 1, 2015, Dr. Passman stated that the claimant quit his jobs at the bank (Exhibit 5F). In a follow-up examination on January 28, 2016, Dr. Passman stated that the claimant is working at Staples as a cashier (Exhibit 13F). On November 16, 2015, Dr. Passman completed and signed a medical source statement (Exhibit 6F). Dr. Passman stated that the claimant has marked impairments in activities of daily living, maintaining social functioning and deficiencies of concentration, persistence or pace (Exhibit 6F). Dr. Passman stated that the claimant has had three episodes of decompensation (Exhibit 6F). The undersigned finds little weight to the opinions of Dr. Passman, as his opinions are inconsistent with the medical evidence of record including the opinions of Dr. Whitchard and Dr. Davis. Additionally, Dr. Passman's opinions are internally inconsistent in Exhibit 6F. Dr. Passman notes a bunch of marked limitation in social activities and concentration, but he has only slight limitations in remembering instructions, responding to supervisors, with no issues in completing simple and repetitive tasks. Moreover, Dr. Passman's opinions are not consistent with his work history and his assigned GAF score of 60.

On February 16, 2016, the claimant was examined by Kim Whitchard, Ph.D. in a mental consultative examination (Exhibit 9F). Dr. Whitchard stated that the claimant is 25 years old (Exhibit 9F). Dr. Whitchard stated that the claimant reported that he is filing for disability because of anxiety and agoraphobia (Exhibit 9F). Dr. Whitchard stated that the claimant "denied any hospitalizations." (Exhibit 9F). Dr. Whitchard stated that the claimant takes Klonopin and "the medication helps a great deal with his anxiety." (Exhibit 9F). Dr. Whitchard stated that the claimant "goes to the gym and exercises every day. He then comes home, showers, and watches movies. He is able to perform ADL's." (Exhibit 9F). Additionally, Dr. Whitchard noted, "The [sic] does have a driver's license and is able to drive himself. He drove himself to the evaluation." (Exhibit 9F). Dr. Whitchard stated that the claimant was in the U.S. Army for two years (Exhibit 9F). Dr. Whitchard stated that the claimant "obtained an AA from Faulkner in 2013. He received a BA in

Business Management from Huntington College in 2015." (Exhibit 9F). Dr. Whitchard stated that the claimant "was able to perform serial 7's. He was able to perform serial 4's. He was able to calculate 3 of 3 multiplication questions. He was able to calculate 2 of 2 simple word problems." (Exhibit 9F). Dr. Whitchard stated that the claimant "had good hygiene. He was well groomed ... His behavior was WNL." (Exhibit 9F). However, Dr. Whitchard stated that the claimant "reported compulsive behavior to include checking behavior and washing his hands multiple times/day. He denied any delusions, hallucinations or ideas of reference." (Exhibit 9F). Dr. Whitchard determined that the claimant has panic disorder without agoraphobia, OCD, and personality disorder (Exhibit 9F). After the examination, Dr. Whitchard completed and signed a medical source statement (Exhibit 9F). Dr. Whitchard stated that the claimant had mild limitations in interacting appropriately with the public, supervisors and co-workers (Exhibit 9F). The undersigned finds great weight to the opinions of Dr. Whitchard, as her opinions are consistent with the medical evidence of record, including the opinions of Dr. Davis who opined no disabling mental impairments (Hearing Testimony).

On October 21, 2015, Linda Duke, Ph.D. (DDS reviewing psychologist) completed and signed a Psychiatric Review Technique (Exhibit 1A). After reviewing the medical evidence of record, Dr. Duke stated that the claimant has mild restriction of activities of daily living (Exhibit 1A). Dr. Duke stated that the claimant has moderate difficulties in maintaining social functioning (Exhibit 1A). Additionally, Dr. Duke stated that the claimant has moderate difficulties in maintaining concentration, persistence or pace (Exhibit 1A). On the same day, Dr. Duke completed and signed a Mental Residual Functional Capacity Assessment (Exhibit 1A). Dr. Duke stated that the claimant is "capable of understanding and remembering short, simple instructions." (Exhibit 1A). Dr. Duke also stated, "Contact with coworkers, supervisors and the general public should be casual and non-confrontational. Changes in the work place should be introduced slowly." (Exhibit 1A). The undersigned finds great weight to the opinions of Dr. Duke, as her opinions are consistent with the medical evidence of record as a whole including the opinions of the medical expert (Dr. Davis) at the hearing and Dr. Whitchard in Exhibit 9F.

Dr. John Davis, Ph.D testified as a medical expert and his

8

opinion regarding the claimant's functioning and that his condition does not meet a listing is given great weight. It is consistent with the record as whole and he is familiar with the case record. It is also consistent with other medical source statements referred to above.

After careful consideration of the evidence, the undersigned finds that the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision.

The claimant's medically determinable impairments could reasonably be expected to cause some symptoms; however, the claimant's statements concerning the intensity, persistence, and limiting effects of these symptoms are not credible to the extent they are inconsistent with the above residual functional capacity assessment. That is, while the claimant's limitations due to his impairments have resulted in a significantly decreased residual functional capacity, he is not precluded from all work in the enormous economy of the United States. The residual functional capacity is supported by the claimant's daily activities (lifting weight in a gym, driving a car, taking care of dog, maintaining a Facebook account) and the lack of objective disabling clinical findings. Moreover, despite the complaints of allegedly disabling symptoms, there have been significant periods of time since the alleged onset date during which the claimant has not taken any medications for those symptoms. Other than Dr. Passman, the record does not contain any opinions from treating or examining physicians indicating that the claimant is disabled or even has limitations greater than those determined in this decision.

The evidence does not support the claimant's allegations of totally incapacitating symptomatology. The record fails to document persistent, reliable manifestations of a disabling loss of functional capacity by the claimant resulting from her [sic] reported symptomatology. After considering the entirety of the record, the undersigned concludes that the claimant would not be precluded from performing the physical and mental requirements of some work activity on a regular and sustained basis.

(Tr. 23-25, 27-29).

## V. DISCUSSION

Eligibility for DIB and SSI benefits requires that the claimant be disabled. 42 U.S.C. §§ 423(a)(1)(E), 1382(a)(1)-(2). A claimant is disabled if the claimant is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). The impairment must be severe, making the claimant unable to do the claimant's previous work or any other substantial gainful activity that exists in the national economy. 42 U.S.C. § 423(d)(2); 20 C.F.R. §§ 404.1505-11. "Substantial gainful activity means work that … [i]nvolves doing significant and productive physical or mental duties [that] [i]s done (or intended) for pay or profit." 20 C.F.R. § 404.1510.

In all Social Security cases, an ALJ utilizes a five-step sequential evaluation in determining whether the claimant is disabled:

> (1) whether the claimant is engaged in substantial gainful activity; (2) if not, whether the claimant has a severe impairment; (3) if so, whether the severe impairment meets or equals an impairment in the Listing of Impairment in the regulations; (4) if not, whether the claimant has the RFC to perform her past relevant work; and (5) if not, whether, in light of the claimant's RFC, age, education and work experience, there are other jobs the claimant can perform.

*Watkins v. Comm'r of Soc. Sec.,* 457 F. App'x 868, 870 (11th Cir. 2012) (per curiam) (citing 20 C.F.R. §§ 404.1520(a)(4), (c)-(f), 416.920(a)(4), (c)(f); *Phillips v. Barnhart,* 357 F.3d 1232, 1237 (11th Cir. 2004)) (footnote omitted). The claimant bears the burden of proving the first four steps, and if the claimant does

10

so, the burden shifts to the Commissioner to prove the fifth step. *Jones v. Apfel*, 190 F.3d 1224, 1228 (11th Cir. 1999).

If the claimant appeals an unfavorable ALJ decision, the reviewing court must determine whether the Commissioner's decision to deny benefits was "supported by substantial evidence and based on proper legal standards." *Winschel v. Comm'r of Soc. Sec.,* 631 F.3d 1176, 1178 (11th Cir. 2011) (citations omitted); *see* 42 U.S.C. § 405(g). "Substantial evidence is more than a scintilla and is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Winschel*, 631 F.3d at 1178 (citations omitted). "In determining whether substantial evidence exists, [the reviewing court] must view the record as a whole, taking into account evidence favorable as well as unfavorable to the [Commissioner's] decision." *Chester v. Bowen*, 792 F.2d 129, 131 (11th Cir. 1986). The reviewing court "may not decide the facts anew, reweigh the evidence, or substitute [its] judgment for that of the [Commissioner]." *Id*. When a decision is supported by substantial evidence, the reviewing court must affirm "[e]ven if [the court] find[s] that the evidence preponderates against the Secretary's decision." *MacGregor v. Bowen*, 786 F.2d 1050, 1053 (11th Cir. 1986).

Earley claims that the ALJ erred in this case by giving superior weight to a non-examining medical expert than to the opinion of Earley's long-standing treating psychiatrist. The Commissioner asserts that the ALJ provided valid reasons for the weight accorded the doctors' opinions, that those findings are

11

supported by substantial evidence, and that the ALJ's evaluation of their opinions is entitled to deference.

The relevant social security regulations provide that medical opinions are weighed by considering the following factors: 1) whether the source of the opinion examined the claimant; 2) whether the source treated the claimant and, if so, a) the length of the treatment relationship and the frequency of examination and b) the nature and extent of the treatment relationship; 3) the supportability of the opinion with relevant evidence and by explanations from the source; 4) the consistency of the opinion with the record as a whole; 5) whether the opinion was offered by a specialist about a medical issue related to his or her area of specialty; and 6) any other factors which tend to support or contradict the opinion. 20 C.F.R. § 404.1527(c)(1)-(6); *see also Nichols v. Comm'r, Soc. Sec. Admin.*, No. 16-11334, 2017 WL 526038, at * 5 (11th Cir. Feb. 8, 2017) (citing 20 C.F.R. §§ 404.1527(c), 416.927(c)) (stating that "[i]n determining how much weight to give a medical opinion, the ALJ considers such factors as the examining or treating relationship, whether the opinion is well-supported, whether the opinion is consistent with the record, and the doctor's specialization").

In the instant case, the ALJ provided an extensive review of the medical evidence in his Decision. Based on this extensive review of the records and testimony, the ALJ accorded "little weight" to Dr. Passman's opinions stating:

> The undersigned finds little weight to the opinions of Dr. Passman, as his opinions are inconsistent with the medical evidence of record including the opinions of Dr. Whitchard and Dr. Davis. Additionally, Dr. Passman's opinions are internally inconsistent in Exhibit 6F. Dr. Passman notes a bunch of marked limitation in social activities and concentration, but he

> has only slight limitations in remembering instructions, responding to supervisors, with no issues in completing simple and repetitive tasks. Moreover, Dr. Passman's opinions are not consistent with his work history and his assigned GAF score of 60.

(Tr. 27).

Determination of whether a claimant is disabled from doing gainful work is an issue reserved to the Commissioner, and a doctor's opinion on that issue can be disregarded. *See Lowery v. Berryhill*, Civ. A. No. 4:16-cv-00913-AKK, 2017 WL 1491274, at *3 (N.D. Ala. Apr. 26, 2017) (citing *Pate v. Comm'r, Soc. Sec. Admin.*, 678 F. App'x 833, 834 (11th Cir. 2017) ("the determination of whether an individual is disabled is reserved to the Commissioner, and no special significance will be given to an opinion on issues reserved to the Commissioner.")); *see also Green v. Soc. Sec. Admin.*, 223 F. App'x 915, 923 (11th Cir. 2007) (holding that "the ALJ will evaluate a [physician's] statement [concerning a claimant's capabilities] in light of the other evidence presented and the ultimate determination of disability is reserved for the ALJ). In addition, a physician's opinion as to a claimant's ability to work is not entitled to recognition from an ALJ if the opinion is not supported by or consistent with the totality of the evidence. *Id*. "In assessing whether a claimant is disabled, an ALJ must consider the medical opinions in a case record *together with the rest of the relevant evidence received.*" *Chambers v. Comm'r of Soc. Sec.*, 662 F. App'x 869, 870 (11th Cir. 2016) (citing 20 C.F.R. § 404.1527(b)) (emphasis added). The ALJ is to consider the claimant's daily activities when evaluating the symptoms and severity of an impairment. *Id*. at 871 (citing 20 C.F.R. § 404.1529(c)(3)(i)). "[T]he

more consistent an opinion is with the record as a whole, the more weight the ALJ will give to that opinion." *Id.* (citing 20 C.F.R. 404.1527(c)(4)).

Although the opinions of treating physicians are generally entitled to substantial or considerable weight, the ALJ does not have to give a treating physician's opinion considerable weight if good cause is shown to the contrary. *See Phillips v. Barnhart,* 357 F.3d 1232, 1240 (11th Cir. 2004). The Eleventh Circuit "has concluded 'good cause' exists when the: (1) treating physician's opinion was not bolstered by the evidence; (2) evidence supported a contrary finding; or (3) treating physician's opinion was conclusory or inconsistent with the doctor's own medical records." *Id.* at 1240-41. Also, if the claimant's own testimony regarding the claimant's daily activities contradicts the consulting physician's opinion, the ALJ's decision not to give the physician's opinion considerable weight is not in error. *See Chambers*, 662 F. App'x at 872. Indeed, "an ALJ may reject any medical opinion if the evidence supports a contrary finding." *Nichols,* 2017 WL 526038, at *5 (citing *Sryock v. Heckler*, 764 F.2d 834, 835 (11th Cir. 1985)). In this case, Dr. Passman opined that Earley had marked impairments in activities of daily living and maintaining social functioning, yet evidence in the record showed that he was able to take care of his activities of daily living, went to the gym daily, was able to drive and did so, had fairly recently attended and graduated from college, and had worked at various jobs. Dr. Passman's opinions were also contrary to the opinions of the other treating, consultative, and reviewing physicians. Therefore, the Court finds that substantial evidence supported the ALJ's finding that Dr. Passman's opinions that were

expressed in the Medical Source Statement were not in line with Earley's own testimony, Dr. Passman's own reports, or the record as a whole.

Earley also claims that the ALJ erred by relying on the opinion of Dr. Davis, the medical expert, who did not examine him. Earley seems to base his argument on an implied assertion that the ALJ only relied on Dr. Davis's opinion in making his assessment of Earley's mental RFC. Earley's argument in this regard is not accurate. The ALJ reviewed and discussed the findings and opinions of Dr. Hagans, Dr. Whitchard and Dr. Duke concerning Earley's mental limitations in detail and gave great weight to the opinions offered by Dr. Whitchard and Dr. Duke.[2] The Eleventh Circuit has recognized that where substantial evidence supports an ALJ's decision to assign great weight to a non-examining physician, even if it is greater weight than is given to a treating doctor, the ALJ may permissibly do so. *See Forsyth v. Comm'r*, 503 F. App'x 892, 893 (11th Cir. 2013); *see also* 20 C.F.R. § 404.1527(c), (e); 56 Fed. Reg. at 36,936-37, 36,953, 36,969; *Willis v. Comm'r of Soc. Sec.,* No. 3:09-CV-297-J-20MCR, 2010 WL 3245449, at *7 (M.D. Ala. Aug. 17, 2010) (affirming ALJ's reliance on non-examining physicians' opinions despite conflict with examining physicians' opinion). In this case, the ALJ gave great weight to Dr. Davis's testimony regarding Earley's functioning and his opinion that Earley's condition does not meet a listing. He supported this finding by stating that Dr. Davis's opinion was

---

[2] The Court notes that even if the ALJ had relied totally on the opinion of Dr. Davis, such reliance would not necessarily be in error. *See Jones v. Colvin*, CA 14-00247-C, 2015 WL 5737156, at *24 (S.D. Ala. Sept. 30, 2015), *quoted in Pettaway v. Colvin*, CA 15-0640-C, 2017 WL 62649, at *7 (S.D. Ala. Jan. 5, 2017) (holding that "[i]n order to find that the ALJ's RFC assessment is supported by substantial evidence, … it is not necessary for the ALJ's assessment to be supported by the assessment of an examining or treating physician").

15

consistent with the record as a whole and consistent with other medical source statements. Based upon its review of Earley's report of daily activities, his work history, his complete medical history, and his educational history, as well as the other medical records presented, the Court finds that the ALJ's decision to afford great weight to Dr. Davis's opinion was based on substantial evidence and was, thus, not in error.

## **CONCLUSION**

It is well-established that it is not this Court's place to reweigh the evidence or substitute its judgment for that of the Commissioner. This Court is limited to a determination of whether the ALJ's decision is supported by substantial evidence and based on proper legal standards. The Court finds that the ALJ's Decision that Earley is not entitled to benefits is supported by substantial evidence and based on proper legal standards. Accordingly, it is **ORDERED** that the decision of the Commissioner of Social Security denying Plaintiff benefits be **AFFIRMED**.

**DONE** and **ORDERED** this the **6th** day of **October, 2017**.

s/P. BRADLEY MURRAY
**UNITED STATES MAGISTRATE JUDGE**